The chancellors took time to consider the case, and afterwards
Chancellor Rutledge
delivered the following decree of the court;
The bill states, that complainant Ann Jacks, then Ann Withers, in the year 1789 married one George Wilson. That he died in 1791, without having either before or after his marriage, as complainants contend, made a will or leaving any issue or relation in this state. That letters of administration were granted to her brother John Withers, who sold the personal estate by permission of the ordinary' — 'And that she purchased to a considerable amount. That some time afterwards, in the year 1794, defendant arrived from Great Britain, produced a certain writing said to bo a will, and signed by the said George Wilson, dated 4th August, 1781; under which ho pretended to claim the whole of the estate, real and personal. That defendant having received notice from the said John Withers of his intentions to contest his claim under that paper, unless he would agree to certain proposals made by said Withers; the said defendant agreed to secure to complainant Ann, one half part of the clear residue of the said Wilson’s personal estate, after paying his debts; and accordingly executed a bond to that effect and for that purpose; in consequence of which the said John Withers withdrew his opposition, and permitted defendant to qualify as executor, and, then gave up to him all *553 the bonds, notes and other papers, relative to the said estate. That soon after defendant executed the bond abovementioned, complainant Ann signed one to defendant for 456?. 3s. 9d. being half the amount of her purchase, and gave him a mortgage for securing payment of the said sum. That the said bond and mortgage were given solely for securing payment of one half of the pur-, chase, in case the defendant should not recover so much money on account of the estate as would be equal to tha amount of her purchase; and that defendant at the time of executing the bond, promised he. would apply one half of all the money he received above the payment of the debts of the said George Wilson, to the discharge of her bond and mortgage. That instead thereof, he had applied the money received to his own use, and placed the mortgage in the sheriff’s hands, to seize and sell the ne-groes. The bill therefore prays an account and injunction. The defendant admits the marriage of G. Wilson with complainant Ann, and his death; but not that he died intostate: on the contrary he exhibits an instrument of writing, which he calls a will, wherein he is made sole heir and executor of the said G. Wilson, chargeable however with payment of his debts and legacies. Defendant admits that complainant Ann being disposed to contest the validity of the will, it was agreed that she should have one half of the clear residue of the personal estate, after payment of all incumbrances — the letters of administration were then revoked, and he qualified on the will. He denies that he had any authority from the legatees to compromise their rights, or that it was his intention to do so; and avers that he fully intended by his contract with complainant to allow her one half of the clear residue of the pex-sonal estate, after paying the debts and fulfilling the said G. Wilson’s testamcntaiy dispositions, and does not know or believe that the will was ever revoked. It is xxecessax’y here to refer to the paper writing mentioned ixx bill and answex’, axid state particular facts, before tlie questions for the determination oí the court are stated.
*554 George Wilson was a single man when he executed this paper. He came over to South-Carolina afterwards; and in 1789 married complainant Ann, with whom he jjve¿ lintil ]ie died in the year 1791, without leaving any issue. It does not appear that he ever made a will in this state, or signed any other writing, disposing of his estate; nor is there any evidence of his having ever spoken to any person about the paper above recited.
Upon this case the general question was, whether' under these circumstances, this paper writing was to be considered as a will still subsisting? Under that, two others arise. First, whether this writing is merely a conditional contingent instrument of disposition, depending on the event of G. Wilson’s death before he arrived in Carolina, or whether absolute and subsisting in all events? Secondly, supposing it absolute, whether the great alteration in his circumstances by a subsequent marriage seven or eight years after making it, will amount to a revocation thereof, so as not to be subsisting at his death ?
For complainant it was contended, that this paper was nothing more than a conditional disposition by deed of the estate, on certain contingencies, which never having happened, it became null. On the other hand it was objected for defendant, that this paper was a will duly executed. That it is not essentially necessary to make use of any particular form of words in drawing wills, provided the intention of testator to dispose of his estate, is evidently and plainly shewn. It was also insisted, that this paper has been proved in the court of ordinary, where its validity as a will, was properly and only determinable. On reading this paper with attention, it is evident that the only words in the whole instrument that give it the smallest resemblance to a will, are those wherein he names and appoints the defendant and several others, successively, sole executors, and universal legatees; for in every other respect, it has the form of a deed. It cannot however be dehied, that a man may make his will in any form he pleases, provided he complies with the formalities required by law. it is equally true, that by long *555 usage the ecclesiastic court has become the proper, though in this state not the only court wherein a will of personal estate is to be proved, and its validity contested; but this court has a power to set the will’ aside for fraud. This case is singularly circumstanced. A paper writing, now for the first time called a will, is proved and recorded in Scotland as a deed. The party who is injured by it, has no opportunity of contesting its validity there: and a copy of it some years afterwards is brought hei’e by the person claiming the estate under it, who when he finds that its validity as a will is about to be disputed, makes a compromise with the widow and gives her a bond, agreeing to allow her one half of the clear residue of the personal estate, after payment of debts: he is then permitted without opposition to qualify before the ordinary, who not having investigated the business, in fact has not determined on the validity of the will. We must here observe that the defendant comes with an ill grace to make this objection, after the compromise he has entered into; because it is doubtful whether the ordinary would have granted him letters testamentary* and qualified him as executor under the paper, if the complainant had made opposition: and defendant fearful of this, seems to have made this compromise in order to lull the complainant into a deceptive security, until he had obtained letters testamentary; supposing that the probate being once gained, no other court had the power to set it aside. The paper having been qualified under as a will, before the ordinary, the question for consideration is, whether it is merely a provisional contingent disposition, or absolute ■and subsisting. Here reference must be had to the instrument itself; from which it is evident that the whole of it, except the clause which provides the annuity for his father, is contingent and eventual; for he sets out with declaring his intention to leave the kingdom and reside in Carolina; but as many accidents might occur to prevent the execution of his design, he made that deed as he calls it to prevent any disputes that might arise about his estate, in case of his death. What those accidents were, he does not mention; but we must presume them to *556 he such as might befal him and occasion his death before he arrived in Carolina, not contemplating that the paper was to have any efficacy if he should arrive safe. That ^ was not intended to be absolute is further evident from. his reserving tile estate to himself and his heirs in the first instance, with the power of making suck alterations as he should afterwards order by witnesses under his hands, in giving legacies or making future provision for any friend or relation during liis life. The case of Parsons and Lanoe, is very nearly similar to this, but much stronger; for in that the testator, after some pecuniary legacies, gave the rest of his estate to his wife: in this the bequest is unto nephews and nieces. There lord Hardwicke determined the will to be aprovisional contingent disposition; and it is observable also that although the testator had two children born after his return from Ireland, yet the lord chancellor would not make that great alteration of circumstances, the ground for his decision, but chose rather to found his decree upon the words of the will. This will then, being so penned, we are of opinion that the disposition is merely provisional and contingent; which not having happened, the disposition of the' estate cannot take place: the rather too as it does not appear that he did any act after his arrival here expressive of an intention to confirm it, or even mention to any of his friends in this state the existence of such a paper; and nothing will set it np but some act done by him after that event to republish it, or defeat the condition. Indeed it is presumable from the length of time that elapsed after its execution, that he considered it as a mere nullity, and altogether inoperative' — we must either presume that, or that he intended a fraud upon his wife, with whom he lived in harmony for two years after his marriage. As this will therefore was merely contingent and eventual, itis unnecessary to give an opinion upon the second question; but it has never yet been determined that marriage alone will amount to a revocation of a will of personal estate; at least there are no cases in the books, wherein the question has been immediately before the feouitj for all the cases that we have examined from Lug *557 and Lug in 1699, to that of Lancashire and Lancashire in 1792, have been on the question of marriage and the birth of children, cither in testator’s lifetime, or posthumous Children; and the judges in the several courts have uniformly declared that marriage simply,\nd alone, has not yet been held to be a revocation of a will of personalty. The legislature having by law recognised the doctrine in its utmost latitude, that marriage and the birth of issue, is a total revocation of a will, it may be a subject worthy their serious attention to settle the question, whether marriage alone shall he a revocation of a will.
The injunction therefore must be continued until a liquidation of defendant’s account by the master, and further order of the court.